PEOPLE v HOOPER

1. CRIMINAL LAW—INDICTMENT AND INFORMATION—AIDER AND ABET-
    TOR—PRINCIPAL—DUE PROCESS.

    An aider and abettor may be indicted, tried, and on conviction
    punished as a principal and no denial of due process results
    from charging an aider and abettor as a principal.

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—OBJECTION—APPELLATE
    REVIEW.

    Appellate review is precluded, as a general rule, where no objec-
    tion was made in the trial court to the instructions to the jury;
    however, the trial judge must instruct as to all the essential
    elements of the crime and failure to object to an omission in
    this regard does not preclude appellate review.

3. LARCENY—IN A BUILDING—FELONIOUS INTENT—INSTRUCTIONS TO
    JURY.

    A trial judge adequately informed the jury as to the meaning of
    "felonious intent" where he specifically stated that in order to
    find the defendant guilty of larceny in a building the defendant
    must have intended to deprive the complainant of his property,
    and he instructed that a larceny does not occur until the

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 127.
[2] 53 Am Jur, Trial §§ 132, 154.
[3, 6] 50 Am Jur 2d, Larceny §§ 35, 49.
[4] 53 Am Jur, Trial § 844.
[5, 7] 21 Am Jur 2d, Criminal Law §§ 509–511.
[8] 53 Am Jur, Trial § 74.
[9] 58 Am Jur, Witnesses § 555.
[10] 29 Am Jur 2d, Evidence § 614.
[11, 12] 58 Am Jur, Witnesses § 574 *et seq.*
[13] 58 Am Jur, Witnesses § 748.
[14, 15] 4 Am Jur 2d, Appeal and Error §§ 159–167.
[16] 29 Am Jur 2d, Evidence §§ 276–278, 292, 293, 358.
[17] 50 Am Jur 2d, Larceny § 168.
[18] 50 Am Jur 2d, Larceny §§ 147, 153, 172.
[19] 50 Am Jur 2d, Larceny §§ 168–177.
[20–23] 21 Am Jur 2d, Criminal Law §§ 525–533.

accused discovers the property is not his, and decides to take the property from its place.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—APPELLATE REVIEW.

On appellate review jury instructions must be read in their entirety and not solely as isolated sections or sentences.

5. CRIMINAL LAW—OBJECTION—APPELLATE REVIEW—MANIFEST INJUSTICE.

Appellate review is precluded where there was no objection to a trial judge's ruling absent a showing of manifest injustice.

6. LARCENY—IN A BUILDING—JUDGE'S COMMENT—FELONIOUS INTENT —EVIDENCE—REMOVAL OF GOODS.

There was no error with respect to a comment by a trial judge that a tape player was not left on the premises, and even if it was, that fact would have no importance where the ultimate question for the jury to determine was whether the defendant, on trial for larceny in a building, believed that the player was really his and there was no conflicting evidence as to whether the player was left on the premises.

7. CRIMINAL LAW—OBJECTION—APPELLATE REVIEW—MANIFEST INJUSTICE—FAIR TRIAL.

Failure to make timely objection precludes appellate review as a general rule; however, since appellate courts cannot condone manifest injustice, the Court of Appeals can react, even in the absence of timely objection, to error which resulted in a denial of a fair trial.

8. CRIMINAL LAW—WITNESSES—JUDICIAL QUESTIONING—JUDICIAL IMPARTIALITY.

The test to be applied in determining whether error resulted from the judicial questioning of witnesses is that if an examination of the record reveals that the veil of judicial impartiality was pierced by the trial judge, the case must be reversed.

9. CRIMINAL LAW—WITNESSES—JUDICIAL QUESTIONING—DISCRETION.

It is well within the trial court's discretion to question witnesses in order to clarify conflicting testimony.

10. CRIMINAL LAW—EVIDENCE—INTERROGATION—WARNING OF RIGHTS —PROCEDURAL SAFEGUARD.

Admission into evidence of a statement made by a defendant to the police was not error where the police did not inform him prior to interrogation that questioning would cease at his request but had adequately informed defendant of all his other

constitutional rights prior to any questioning; mentioning of the right to cease questioning is a procedural safeguard rather than a special warning requirement.

11. Criminal Law—Witnesses—Questioning—Appeal and Error—Prejudice.

A case should not be reversed merely because a few technically improper questions are asked of witnesses by the prosecutor; in order to require a reversal some prejudice or patterns of eliciting inadmissible testimony must be shown.

12. Criminal Law—Witnesses—Prosecutor's Comment.

It is proper for the prosecutor to comment on the failure of a defendant to produce a witness who knows facts which will be helpful to a defendant in making his defense and is competent and within the reach of the defendant; however, in some instances the manner in which the comment is made can be improper and whether such remarks constitute reversible error depends on the circumstances of the case.

13. Criminal Law—Witnesses—Cross-Examination—Impeachment —Objection.

It was not error for the prosecutor to answer in the affirmative where while defendant was being cross-examined the defendant asked the prosecutor if he was trying to make him look like a liar, where there was no objection and the suggestion that defendant was lying was offered by the defendant without solicitation by the prosecutor.

14. Criminal Law—Objection—Appeal and Error.

Failure to object in the trial court precludes appellate review on the issue that the prosecution improperly summarized the evidence during closing argument.

15. Criminal Law—Objection—Improper Questions—Prior Misconduct—Appellate Review.

Defendant's failure to object to alleged improper references by the prosecution to his prior misconduct which did not result in a conviction precludes appellate review unless a manifest injustice is shown.

16. Criminal Law—Fraud—Bribery—Perjury—Evidence—Suppression of Evidence.

A party's falsehood or other fraud in the preparation and presentation of his case, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct is receivable in evidence against him as an indication of his consciousness that

his case is a weak or unfounded one, and evidence that a defendant has attempted to suppress testimony or induce perjury is admissible.

17. LARCENY—IN A BUILDING—WITNESSES—CROSS-EXAMINATION—IMPEACHMENT—OBJECTION.

Questioning of the defendant by the prosecutor during cross-examination of the defendant in a trial for larceny in a building regarding an incident where defendant threw a rock at the complainant's windshield did not result in a miscarriage of justice where the matter was brought out by the defendant without solicitation by the prosecution and was in rebuttal to defendant's mentioning incidents where the complainant allegedly shot at the defendant.

18. LARCENY—IN A BUILDING—QUESTIONING DEFENDANT—PRIOR THEFTS.

Questioning of a defendant during cross-examination in a trial for larceny in a building concerning prior thefts does not necessitate a reversal where there was no objection, the subject of stealing was opened by the defendant, the prosecution only asked four general questions, and the questions only dealt with the general subject of stealing and not any particular thefts.

19. LARCENY—IN A BUILDING—PROSECUTOR'S REMARKS—QUESTIONING —OBJECTION.

A reference by the prosecution during a trial for larceny from a building to other items taken from the complainant's automobile in the garage and which had been deleted from the complaint did not result in error where no objection was made in the trial court and where the record reveals no miscarriage of justice.

20. CRIMINAL LAW—SENTENCES—APPEAL AND ERROR.

The trial judge, and the trial judge alone, makes the decision as to what a convicted defendant's sentence shall be and the length of sentence is not subject to review if within the limits of the lawful penalty (MCLA 769.24).

21. CRIMINAL LAW—SENTENCING—RECORD.

There was no error in sentencing defendant where the judge specifically stated that in his consideration of defendant's record he was considering convictions and not arrests.

22. CRIMINAL LAW—SENTENCING—FACTORS.

A trial judge may consider factors other than those involved in the case before him when sentencing a defendant.

23. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—DURATION.

A minimum sentence which exceeds two-thirds of the maximum sentence is improper under the indeterminate sentence statute.

Appeal from Kalamazoo, Raymond W. Fox, J. Submitted Division 3 November 10, 1972, at Lansing. (Docket No. 12909.) Decided October 30, 1973. Leave to appeal denied, 391 Mich —.

Alexander Hooper was convicted of larceny in a building. Defendant appeals. Affirmed with minimum sentence modified.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *Stephen M. Wheeler,* Assistant Prosecuting Attorney, for the people.

*David A. Goldstein,* Assistant State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and BRONSON and TARGONSKI,* JJ.

TARGONSKI, J. Defendant was convicted by a jury of the crime of larceny in a building[1] and sentenced to a prison term of three to four years.

The complaint charged the appellant took a mini-8 tape player; six tapes; a rear tape speaker; and a steering wheel knob. At the preliminary examination the prosecution moved to delete all items except the tape player from the complaint and the motion was granted.

At the trial, the complainant's neighbors testified that they observed two men go to the complainant's garage and the defendant standing outside the garage while the other man went inside.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.360; MSA 28.592.

After approximately 45 minutes the other man emerged from the garage carrying what appeared to be a tape player. The witnesses further testified that the men started towards the neighbor's home, but upon noticing that they were being observed, they threw what they were carrying over a fence and departed. The goods that were thrown over the fence were those that were originally listed in the complaint.

The defendant took the stand and testified that a gas station attendant, named "Bud", told him that the complaining witness had stolen the defendant's tape player. The defendant testified that he then went with a man named "Porky" to retrieve his recorder from the complainant's garage. However, when "Porky" showed him the recorder that he had taken from the car, he realized it was not his recorder and told "Porky" to get rid of it and this is when the objects were thrown over the fence.

The first claim of error raised on appeal is that the information charged the defendant with larceny from a building but the trial court instructed the jury on aiding and abetting, despite the fact that he was not charged, in the information, as an aider and abettor. It is contended now that this procedure resulted in a denial of due process since he was not given notice of the nature of the charges against him.

We do not agree. It is well settled that an aider and abettor may be indicted, tried, and on conviction punished as a principal and no denial of due process results from charging an aider and abettor as a principal. *People v Lamson,* 44 Mich App 447; 205 NW2d 189 (1972); *People v Palmer,* 42 Mich App 549; 202 NW2d 536 (1972); *People v Dockery,* 20 Mich App 201; 173 NW2d 726 (1969); *People v*

*Weatherspoon,* 6 Mich App 233; 148 NW2d 891 (1967).

The next claim of error concerns the instructions that were given to the jury. At the outset it must be noted that no objection was made in the trial court to the instructions and that as a general rule this precludes appellate review. *People v Kinsman,* 16 Mich App 611; 168 NW2d 422 (1969); *People v Keiswetter,* 7 Mich App 334; 151 NW2d 829 (1967). However, the trial judge must instruct as to all the essential elements of the crime and failure to object to an omission in this regard does not preclude appellate review. *People v Miller,* 35 Mich App 627; 192 NW2d 517 (1971).

The defendant's first contention, with regard to these instructions is that although the trial court instructed that the taking must be with a "felonious intent" he never instructed that the intent must be simultaneous with the taking and that there must be an intent to permanently deprive the victim of his property. A reading of the entire instructions reveals that although the magic words were not used, the trial judge specifically stated that in order to find the defendant guilty he must have intended to deprive the complainant of his property. Furthermore, the trial court instructed that a larceny does not occur until the accused discovers the property is not his, and decides to take the property from its place. Thus, reviewing the instructions in their entirety, we hold the trial court adequately informed the jury as to the meaning of "felonious intent".

The defendant also contends that other instructions were ambiguous and misleading. On appellate review jury instructions must be read in their entirety and not solely as isolated sections or sentences. *People v Dye,* 356 Mich 271; 96 NW2d

788 (1959); *People v Iron,* 26 Mich App 235; 182 NW2d 342 (1970). A review of the instructions, when viewed in conjunction with the whole, were not ambiguous or misleading. *People v Ely,* 35 Mich App 390; 192 NW2d 662 (1971).

Finally, the defendant contends that the trial court directed a verdict as to a finding of fact. This contention is based on the trial judge's statement that the tape player was not left on the premises, and even if it was, that fact would have no importance. However, there was no objection of this issue in the trial court, and absent a showing of manifest injustice, this precludes appellate review. *People v Harper,* 43 Mich App 500; 204 NW2d 263 (1972); *People v Spaulding,* 42 Mich App 492; 202 NW2d 450 (1972).

The correct rule with regard to whether the judge's comment was improper in this case was stated in *People v Wichman,* 15 Mich App 110, 114; 166 NW2d 298, 301 (1968), as follows:

"We read these pronouncements of our Supreme Court to mean that the trial judge should not make known his views concerning disputed factual issues, the credibility of witnesses or the ultimate question about to be submitted to the jury."

In the instant case, the comment made by the trial judge referred to asportation as an element of larceny. However, the ultimate question for the jury to determine was whether the defendant believed that the recorder was really his. Furthermore, there was no conflicting evidence as to whether the recorder was left on the premises. Under these circumstances, there was no error with respect to this comment.

The defendant next contends that the trial judge's questioning of the defendant, in the pres-

ence of the jury, constituted reversible error. He claims that the judge revealed that the defendant had been previously arrested, and that the questions were in the form of cross-examination, from which the jury might have inferred that the judge did not believe him.

The questioning complained of occurred while the defendant was testifying and he stated that he had not been picked up until 1971. The court questioned the defendant concerning a court record which stated that he had been picked up in 1970. After having the defendant clarify this matter, the judge immediately ceased the questioning. No objection was made by the defendant to the questioning.

As a general rule, failure to make timely objection precludes appellate review. *People v McIntosh,* 34 Mich App 578; 191 NW2d 749 (1971); *People v Roby,* 38 Mich App 387; 196 NW2d 346 (1972). However, since appellate courts cannot condone manifest injustice, this Court can react, even in the absence of timely objection, to error which resulted in a denial of a fair trial. *People v Bedsole,* 15 Mich App 459; 166 NW2d 642 (1969); *People v Roby, supra.*

With respect to his second contention, the test to be applied in determining whether error resulted from the judicial questioning of witnesses is that if an examination of the record reveals that the veil of judicial impartiality was pierced by the trial judge, the case must be reversed. *People v Wilson,* 21 Mich App 36; 174 NW2d 914 (1969); *People v Roby, supra.* In the instant case, the questioning of the defendant covered two pages of the trial transcript which contained approximately 120 pages of testimony and was not conducted in a manner

showing hostility or bias towards the appellant. The obvious and sole purpose of the questioning was to clarify the defendant's testimony and to resolve a conflict between the court record and his testimony. It is well within the trial court's discretion to question witnesses in order to clarify conflicting testimony. *People v Dumas,* 25 Mich App 535; 181 NW2d 627 (1970); *People v Saunders,* 25 Mich App 149; 181 NW2d 4 (1970). Thus we cannot say that the veil of judicial impartiality was pierced, and therefore there was no miscarriage of justice.

The defendant also contends that it was error for the trial court to admit a statement made by him to the police where the police did not inform him prior to interrogation that the questioning would cease at his request. The record shows that he was adequately informed of all his other constitutional rights prior to any questioning.

This argument was rejected by this Court in *People v Tubbs,* 22 Mich App 549, 555–556; 177 NW2d 622, 625 (1970), wherein it was stated:

"We conclude that the foregoing reference to the fact that whenever an individual *indicates* his desire to remain silent, the questioning must cease, is a rule to govern the conduct of the proceedings and is not the setting out of a special warning requirement. The subject's warning requirements at that point concerning his right to remain silent have already been given."

See also *People v Thomas Smith,* 30 Mich App 34; 186 NW2d 61 (1971); *People v Pantoja,* 28 Mich App 681; 184 NW2d 762 (1970).

We are aware of this court's decision in *People v Jourdan,* 14 Mich App 743; 165 NW2d 890 (1968), where it was held that a subject must be told that questioning will cease whenever he indicates. How-

ever, after a careful reading of *Miranda*[2] we feel
that the mentioning of the right to cease question-
ing was a procedural safeguard rather than a
special warning requirement. Thus, we are in
agreement with this Court's reasoning in *People v
Tubbs, supra,* and find no error.

The next claim of error raised on appeal is that
the prosecutor's conduct and remarks prejudiced
the appellant and deprived him of a fair trial.

The first claim of prosecutorial misconduct is
asking his witnesses questions which elicited inad-
missible and misleading testimony. The primary
complaint is that the prosecution asked leading
and suggestive questions. A review of the record
reveals that the prosecutor did ask several leading
questions during the examination of witnesses.
However, this Court does not believe a case should
be reversed merely because a few technically im-
proper questions are asked. In fact, it is hard to
find a trial where every question is exactly proper.
In order to require a reversal some prejudice or
patterns of eliciting inadmissible testimony must
be shown. Neither of these are supported by the
record in the instant case. Each time a technically
improper question was asked, it was either with-
drawn by the prosecution or the prosecution re-
phrased the question in proper form. We cannot
discern a pattern of eliciting inadmissible testi-
mony in the instant case. Furthermore, we cannot
find any prejudice to the defendant by the few
improper questions that were asked.

The defendant's next claim of misconduct is that
during the prosecution's cross-examination of the
appellant, he shifted the burden of proof. The
misconduct complained of was the prosecutor's

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10
ALR3d 974 (1966).

statement that "It's real convenient that today you can't find them, isn't it?" This comment concerned the defendant's failure to call witnesses who he had stated could verify that he was told that the complainant had his tape player.

It is well settled that if a witness knows facts which will be helpful to a defendant in making his defense, and if he is competent and within the reach of the defendant, his failure to produce him ought properly to be a subject of comment by the prosecutor. *People v Hunter,* 218 Mich 525; 188 NW 346 (1922); *People v Falkner,* 36 Mich App 101; 193 NW2d 178 (1971), *reversed on other grounds,* 389 Mich 682 (1973). However, in some instances the manner in which the comment is made can be improper and whether such remarks constitute reversible error depends on the circumstances of the case. *People v Flaugher,* 228 Mich 101, 103; 199 NW 662, 663 (1924); *People v McGarry,* 136 Mich 316; 99 NW 147 (1904).

Here, this was the only comment made by the prosecution with regard to the defendant's failure to call witnesses which he contended would testify that the appellant believed that the tape player in the complainant's car belonged to him. Under these circumstances, we hold that the prosecutor's comment was within the permissible scope of comment on a defendant's failure to produce witnesses which are vital to his defense.

The defendant also claims that the prosecutor expressed his belief that the defendant was guilty. The basis for this contention was that during the cross-examination of the defendant by the prosecutor, the defendant asked him if he was trying to make him look like a liar. To this question the prosecutor answered in the affirmative. A review of the record reveals that there was no objection

and that the suggestion that the appellant was lying was offered by the defendant without any solicitation by the prosecution. Under these circumstances, there was no error.

The defendant's final claim of misconduct is that the prosecution missummarized the evidence during closing argument. However, since there was no objection in the trial court, this precludes appellate review on this issue.

The next contention raised by the defendant is that his conviction must be reversed due to the prosecutor's repeated reference to prior misconduct which did not result in a conviction.

The defendant failed to object to any of the alleged improper questions and this precludes appellate review unless a manifest injustice is shown. *People v Goodwin,* 40 Mich App 709; 199 NW2d 552 (1972); *People v Roby, supra.*

The defendant's first claim that the following examination of the complaining witness by the prosecution was improper.

"*Prosecutor:* Did you have a conversation with this defendant?

"*Witness:* Yes.

"*Prosecutor:* What did he say?

"*Witness:* He asked me, would I drop the charges on him? I said I couldn't do that and then he asked would I say that I didn't see him in the garage?"

The defendant contends that this testimony put before the jury evidence that he asked the complaining witness to commit two separate offenses— attempted obstruction of justice[3] and inciting or procuring one to commit perjury.[4] We agree with this contention but hold that under the circum-

[3] MCLA 750.505; MSA 28.773.

[4] MCLA 750.425; MSA 28.667.

stances present in the instant case, this questioning was proper.

The grounds on which this evidence is admissible has been commonly termed as being "consciousness of a weak case". In 2 Wigmore, Evidence (3d ed), § 278, p 120, the rule is stated as follows:

"It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's *falsehood* or *other fraud* in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit."

Michigan has long followed this rule and held that evidence that a defendant has attempted to suppress testimony or induce perjury is admissible. *People v Salsbury,* 134 Mich 537; 96 NW 936 (1903); *People v Adams,* 162 Mich 371; 127 NW 354 (1910); *People v Randall,* 294 Mich 478; 293 NW 725 (1940). This Court recently reaffirmed this long-standing rule in *People v Casper,* 25 Mich App 1, 7; 180 NW2d 906, 909 (1970), wherein the rule was stated as follows:

"Michigan authority appears uniform in holding that actions by the defendant such as flight to avoid lawful arrest, procuring perjured testimony and attempts to destroy evidence, while possible as consistent with innocence as with guilt, may be considered by the jury as evidence of guilt."

Thus, in the instant case there was no error in allowing this testimony since it was proper evidence for the jury to consider.

The defendant also contends that the prosecution's reference to an incident where the defendant threw a rock at the complainant's windshield was improper. This problem arose in *People v Miniear*, 8 Mich App 591, 598; 155 NW2d 222, 225 (1967), where a witness was asked if he had robbed a bar. In upholding the trial court's decision in disallowing the question, this Court stated:

"The distinction may be close, but to ask a witness whether or not he is guilty of a particular crime exceeds the permissible bounds of cross-examination where the purpose is impeachment of credibility."

However, this incident was brought out during the prosecution's cross-examination of the defendant and was brought out by the defendant without any solicitation by the prosecution. After the defendant mentioned the incident, the prosecution only asked him two questions concerning the incident. Furthermore, throughout the trial the defendant was continually allowed to mention prior incidents where the complainant allegedly shot at him. This incident, offered by the defendant, was mere rebuttal. Thus, we cannot say that this questioning resulted in a miscarriage of justice.

The defendant also complains of the prosecution's questions concerning his prior thefts. However, again there was no objection, the subject of stealing was opened by the defendant, the prosecution only asked four general questions, and the questions only dealt with the general subject of stealing and not any particular thefts. Therefore, we find that this questioning does not necessitate a reversal.

Finally, with regard to this issue, the defendant claims that it was error for the prosecution to mention the other items taken from the complain-

ant's automobile since they had been deleted from
the complaint. There was no objection made in the
trial court and a review of the record reveals that
no miscarriage of justice resulted from this ques-
tioning.

The final allegations of error concern the mat-
ters that were considered by the trial court in
sentencing the defendant. The first question that
must be considered, in this regard, is his conten-
tion that the appellate courts of this state should
adopt a policy of granting appellate review of
sentences. This contention was recently rejected in
*People v Malkowski,* 385 Mich 244, 247; 188 NW2d
559, 561 (1971), wherein the limits of appellate
review of sentences were stated as follows:

"The trial judge, and the trial judge alone, makes the
decision as to what his sentence shall be. The length of
sentence is not subject to review if within the limits of
the lawful penalty. (MCLA § 769.24 [Stat Ann 1954 Rev
§ 28.1094])."

The next contention is that the trial court con-
sidered improper matters when it was sentencing
the defendant. The basis of this contention is the
following statement made by the trial court at
sentencing:

"He has a number of misdemeanors. They start out
as felonies and they are reduced; felonious assault,
reduced to assault and battery; an illegal entry, a year's
probation; attempted larceny under a hundred; one
drunk on here; then he had some traffic troubles; an-
other assault and battery; another assault and battery
—these are only the convictions—another felonious
assault, changed to use of an unregistered gun. I don't
know whether that time you got shot or whether some-
one else did, but I think it was changed to use of
unregistered gun; another time larceny from an auto-
mobile, which was reduced to concealing stolen prop-

erty under $100; and skipping those that he was acquitted on, or not charged, or dismissed; larceny in a building, it says 60 days in jail, you must have taken a plea to simple larceny. I don't know.

*Mr. Fenner:* It was an ordinance matter, I believe, your Honor.

*The Court:* Was it? Oh, under the city ordinance. Illegal entry. That's all the convictions I can find. I find a raft of them, but most of them wound up as misdemeanors."

Apparently, the claim of the defendant is that since he was convicted only of lesser included offenses of crimes he was arrested for, the trial judge had no right to consider the original crimes with which he was charged in determining the sentence to be imposed in the instant case.

A reading of the judge's statement clearly shows that the references to the arrests for felonies which resulted in misdemeanor convictions arose out of the same transactions. Furthermore, there is nothing to indicate that the court considered any arrests. Quite to the contrary, the sentencing judge specifically stated that he was only considering convictions and not arrests. Under these circumstances, there was no error. *People v Matthews* (Docket No. 12473, decided June 29, 1972 [unreported]).

The defendant also claims that it was improper for the trial court to consider ordinance violation since this is not considered a crime.

It is well settled that a trial judge may consider factors other than those involved in the case before him. *People v Camak,* 5 Mich App 655; 147 NW2d 746 (1967); *People v Peterson,* 30 Mich App 215; 185 NW2d 915 (1971). Thus, whether the conviction was for an ordinance violation or a violation of a state statute makes little difference in the instant case. It would be impossible for this

Court to determine from this record whether the ordinance violation was a "crime" since the exact violation is not set out and there is some doubt as to whether it was actually the violation of a municipal ordinance rather than some statutory violation.

Furthermore, there is nothing in the record to show any substantial reliance on this matter by the trial judge and in light of the abundance of more serious convictions, we find no need to reverse. *People v Matthews, supra.*

Finally, the defendant contends that his sentence of three to four years imprisonment violated the Supreme Court's ruling in *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972). In *Tanner,* it was held that any sentence which provides for a minimum exceeding two-thirds of the maximum sentence is improper. In the instant case, the minimum sentence of three years exceeded two-thirds of the maximum and was in violation of *Tanner.*

Accordingly, the appellant's minimum sentence is reduced from three years to two years and nine months.

Affirmed with sentence modified in accordance with this opinion.

McGREGOR, P. J., concurred.

BRONSON, J., concurred in the result.