*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ABEL NODARSE,

        Defendant-Appellant.

UNPUBLISHED
October 22, 2019

No. 344865
Kent Circuit Court
LC No. 16-001622-FC

Before: MARKEY, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f), and one count of assault by strangulation, MCL 750.84(1)(b). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 30 to 60 years for each CSC-I conviction and to 25 to 60 years for the assault conviction. It further ordered that Count 1 (CSC-I) be served concurrently with Count 3 (assault by strangulation), and that Count 2 (CSC-I) be served consecutively to Count 1. We affirm defendant's convictions, but remand for the articulation of reasons for imposing consecutive sentences or for resentencing.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant sexually assaulted a female victim (BE) at a party on the evening of February 6, 2016. During the party, he entered a room with BE, refused to let her leave the room, pushed her onto the bed, and began strangling her. As he did so, he sexually assaulted her. This occurred for roughly an hour before one of BE's friends walked into the room.

After the police were called, BE stated to the responding officer that defendant had inserted both his penis and a finger into her. A sexual assault nurse examiner (SANE) examined BE and found no trauma to the vaginal area. However, the SANE observed significant damage to BE's neck and a number of other injuries, including scratches near her pelvic area and lower stomach. BE did not describe any digital penetration to the SANE. The SANE also collected DNA swabs from BE's vagina. Subsequent testing of those swabs revealed the presence of defendant's DNA.

Defendant was charged with two counts of CSC-I (one count for penile penetration and one count for digital penetration) and one count of assault by strangulation. Before trial, defendant pleaded guilty to one count of CSC-I and one count of assault by strangulation. The trial court sentenced defendant to concurrent terms of 30 to 60 years for the CSC-I conviction and 6 to 10 years for the assault conviction. However, defendant later moved to withdraw his plea, noting that the trial court had not informed him of the lifetime electronic monitoring he would face by pleading guilty to CSC-I. During the hearing on defendant's motion, the trial court specifically recognized and informed defendant of its discretion to impose consecutive sentences if he were to be convicted of multiple CSC-I charges. The prosecution also warned defendant that the trial court could impose consecutive sentences. Finally, defense counsel explained consecutive sentencing to defendant on the record and stated that he had discussed with defendant the risks of withdrawing his plea. Notwithstanding these warnings, defendant indicated that he wished to withdraw his plea; the trial court granted defendant's motion and the case proceeded to trial.

On the first day of trial, the prosecution made another on-the-record plea offer to defendant. The trial court again explained the consequences of a conviction if defendant rejected the plea and proceeded to trial, but did not repeat its earlier warning regarding the risk of consecutive sentences if defendant were convicted of multiple counts of CSC-I. Defendant rejected the prosecution's offer and proceeded to trial.

At trial, BE testified that while defendant was choking her, he put his penis into her vagina. She explained that she felt defendant penetrate her vagina with his penis. She further testified that she did not recall seeing defendant digitally penetrate her because defendant had his hands on her neck and this impeded her from looking down. Nevertheless, in response to a question about possible digital penetration, she said, "he put it in there. I could feel it." The SANE also testified and described injuries to BE, including scratch marks and abrasions to her lower abdomen and pelvic region. Audio of a police interview with defendant was played for the jury. During this interview, defendant admitted that he may have digitally penetrated BE.

Defendant testified in his own defense. On cross-examination, he admitted that he had "penetrated [BE] with [his] fingers in the bedroom." However, in the middle of defendant's testimony, defense counsel moved for a directed verdict of acquittal.[1] Defense counsel argued that the prosecution had failed to present any evidence of digital penetration and that defendant was therefore entitled to a directed verdict of acquittal on the second CSC-I charge. The trial court denied defendant's motion, reasoning that because BE testified to digital penetration and her injuries indicated that defendant's hands had at some point been near her lower abdomen and pelvic region, a reasonable jury could find that defendant had digitally penetrated her. In making its ruling, the trial court ignored defendant's admission to digital penetration. After defendant finished his testimony and counsel delivered closing arguments, the jury convicted defendant on all three counts.

---

[1] The trial was adjourned for the day before defendant's testimony was concluded. Before testimony resumed the next day, defendant moved for a directed verdict.

The trial court sentenced defendant as described. As noted, it ordered that the sentence for one count of CSC-I be served concurrently with the sentence for the assault conviction. But it ordered that the second CSC-I sentence be served consecutively to the first CSC-I sentence.

This appeal followed. On appeal, defendant challenges the trial court's denial of his directed verdict motion and further challenges the consecutive sentencing as resulting in an unreasonable and disproportionate sentence.

## II. DENIAL OF DIRECTED VERDICT

Defendant argues that the trial court erred by denying his motion for a directed verdict. He claims that: (1) there was no *corpus delicti* of the crime of digital penetration, and that defendant's testimony admitting to digital penetration was therefore improperly admitted, and (2) absent defendant's confession, the prosecution had not presented sufficient evidence of digital penetration to survive a directed verdict. We disagree in both respects.

> When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. [*People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).]

When reviewing a trial court's denial of a directed verdict, we draw all reasonable inferences in favor of the prosecution. *People v McKewen*, 326 Mich App 342, 348-349; 926 NW2d 888 (2018). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted).

Because defendant did not object at trial based on a violation of the *corpus delicti* rule, his claim in this regard is unpreserved. We review an unpreserved claim under the *corpus delicti* rule for plain error. See *People v Schumacher*, 276 Mich App 165, 177, 180; 740 NW2d 534 (2007) (applying plain error to unpreserved *corpus delicti* claims). Under the plain error rule, "three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error affects a defendant's substantial rights when "the error affected the outcome of the lower court proceedings." *Id.*

### 1. *CORPUS DELICTI*

Defendant argues that his testimony admitting to digital penetration was inadmissible under the *corpus delicti* rule. We note that the trial court did not rely on defendant's inculpatory testimony in ruling on defendant's directed verdict motion; nor, as discussed later in this opinion, was that testimony necessary for the trial court to properly hold that defendant was not entitled to a directed verdict on the second count of CSC-I. Nonetheless, we briefly note that defendant's argument concerning *corpus delicti* is without merit.

"In a criminal prosecution, proof of the *corpus delicti* of a crime is required before the prosecution may introduce a defendant's inculpatory statements." *Schumacher*, 276 Mich App at 180. "The rule bars the prosecution from using a defendant's confession in any criminal case unless it presents direct or circumstantial evidence independent of the defendant's confession that the specific injury or loss occurred and that some criminal agency was the source or cause of the injury." *People v Ish*, 252 Mich App 115, 116; 652 NW2d 257 (2002) (applying the rule of *corpus delicti* for first-degree home invasion).

> Specifically, the rule provides that a defendant's confession may not be admitted unless there is direct or circumstantial evidence independent of the confession establishing (1) the occurrence of the specific injury (for example, death in cases of homicide) and (2) some criminal agency as the source of the injury. [*People v Konrad*, 449 Mich 263, 269-270; 536 NW2d 517 (1995).]

The *corpus delicti* for a crime must be shown by a preponderance of the evidence. *People v Burns*, 250 Mich App 436, 438; 647 NW2d 515 (2002). This evidence may be direct or circumstantial. *Id*.

Defendant argues that, "other than [his] one statement" to police, there was no independent evidence that he had digitally penetrated BE. But this is untrue. BE testified that she felt defendant insert his finger into her vagina. The testimony of the victim alone is sufficient evidence to support a conviction for a sexual offense and need not be corroborated by additional evidence. See MCL 750.520h; *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016). Further, BE's testimony was supported by evidence of her injuries, which included scratch marks on her lower torso. The combination of this evidence was sufficient to establish by a preponderance of the evidence that defendant committed a digital penetration while also committing a penile penetration. Although defendant challenges the credibility of BE's testimony, such a challenge goes to the weight of the evidence, not its existence or admissibility. See *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998). Defendant has failed to demonstrate that the trial court should have sua sponte stricken his inculpatory testimony on the ground that the *corpus delicti* of the crime was not established. And again, we note that the trial court did not in any event consider defendant's testimony in ruling on his motion for a directed verdict. Defendant has not established plain error. *Carines*, 460 Mich at 763.

## 2. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that the prosecution did not present sufficient evidence to support a conclusion that he had digitally penetrated BE, and that he was therefore entitled to a directed verdict on the second CSC-I count. We disagree.

Although BE did testify that defendant had used his "hands" to choke her, arguably implying that both hands were on her neck, and that she did not see defendant digitally penetrate her, she also testified in response to a question about defendant penetrating her with his finger that "he put it in there. I could feel it." The person who interrupted the assault also testified that when she walked into the room she observed defendant holding the victim by the neck with one hand. Finally, BE's lower abdomen and pelvic area were scratched. A reasonable juror could infer from this evidence that defendant may have (however briefly) removed one hand from BE's

-4-

neck to digitally penetrate her while also holding her neck with his other hand. Therefore, contrary to defendant's argument, there is evidence supporting the conclusion that defendant digitally penetrated BE.

Again, we review a trial court's decision on a motion for directed verdict by considering all evidence and reasonable inferences "in the light most favorable to the prosecutor . . . ." *Aldrich*, 246 Mich App at 122. Viewed under this deferential standard, there was sufficient evidence for a reasonable juror to infer that defendant digitally penetrated BE. Defendant's challenge to BE's testimony goes to BE's credibility, a determination best left for the jury. See *People v Wolfe*, 440 Mich 508, 517-518; 489 NW2d 748 (1992); *Lemmon*, 456 Mich at 637. Accordingly, the trial court did not err by denying defendant's motion for a directed verdict. *Aldrich*, 246 Mich App at 122.

## III. SENTENCING

Defendant also challenges his sentence as unreasonable. As part of this argument, he asserts that his trial counsel was ineffective, not at sentencing, but in allegedly failing to inform him that he risked consecutive sentences if he declined the prosecution's day-of-trial plea offer and proceeded to trial, and requests that we remand this case for an evidentiary hearing to determine, for purposes of establishing prejudice, whether defendant would have accepted the prosecution's second plea offer but for the alleged ineffectiveness. We disagree that defendant received ineffective assistance from his trial counsel or that a remand is appropriate. Defendant also argues that the imposition of consecutive sentences resulted in an unreasonable and disproportionate overall sentence. We decline to reach that issue at this juncture, because we conclude that we must first remand for the articulation of reasons for imposing consecutive sentences or for resentencing.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that his trial counsel was ineffective in failing to advise him, before he rejected the prosecution's second plea offer, that by doing so he would risk having the trial court impose consecutive sentences. We disagree.[2]

"Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions

---

[2] Defendant does not explain why he has chosen to frame this ineffective-assistance challenge as a *sentencing* challenge. Our review of whether or not his counsel was ineffective in advising defendant regarding a plea offer is not affected by the length of sentences defendant later received after trial—this Court does not review trial counsel's performance "with the benefit of hindsight." *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). The fact that defendant received longer sentences after trial than he would have received if he had accepted the plea offer has no bearing on whether, but for his counsel's allegedly deficient performance, he would have accepted the plea agreement at the time it was offered. *People v Douglas*, 496 Mich 557, 591-592; 852.

of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). A defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant did not move for a *Ginther*[3] hearing before the trial court or this Court; therefore, "our review is limited to the facts on the record." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000); *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich. App. 181, 190; 886 NW2d 173 (2016). A defendant arguing ineffective assistance in this context must satisfy a two-pronged standard by showing: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v Washington*, 466 US 668, 688-695; 104 S Ct 2502; 80 L Ed 2d 674 (1984); *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014).

Defendant argues that his counsel was ineffective in failing to warn him that if he proceeded to trial, he might face consecutive sentences, in the trial court's discretion. Defense counsel's failure to accurately advise a defendant of the consequences of rejecting a plea offer may constitute deficient performance. *Douglas*, 496 Mich at 591-592. "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *Id*. at 592. A defendant may be prejudiced by trial counsel's failure to advise him of a possible sentence when exercising his right to trial. *Lafler v Cooper,* 566 US 156, 166; 132 S Ct 1376; 182 L Ed 2d 398 (2012). If a defendant was in fact not advised of the consequences of rejecting a plea offer, he may establish prejudice by showing that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea." *Id*. at 174.

Defendant notes that the portion of the trial transcript in which he rejected the prosecution's second plea offer is devoid of explicit statements from his defense counsel that he had advised defendant of the risk of consecutive sentences. Defendant argues that this establishes his counsel's deficient performance. We disagree. The record shows that both defense counsel and the trial court informed defendant, at a previous plea hearing, of the risk of consecutive sentences if he went to trial on two CSC-I counts. It was clear to defendant at the time he rejected the first plea offer that by doing so he would be proceeding to trial on two CSC-I counts; in fact, the trial court specifically stated that "if you go to trial, the prosecution has informed you that they're going to proceed not one crime, not on two crimes, but on all three crimes that you were originally charged with." Further, although defendant did not state that his counsel had informed him of the risk of consecutive sentences, he did state that he had discussed the issue of sentencing with his attorney, and went so far as to state that "[m]y attorney is telling me I'm going to die in prison."

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

The record does not overcome our presumption of defense counsel's competence. *Schrauben*, 314 Mich App at 190. Moreover, defendant has not demonstrated prejudice. Defendant withdrew a previous plea after being sentenced to 30 to 60 years' imprisonment. He was informed that the second plea would result in a minimum sentence of 20 years. He was also informed that, should he be convicted of all three charges, the prosecution would ask the trial court to exceed the sentencing guidelines. Finally, as stated, defendant was informed on prior occasions of the risk of consecutive sentences and yet chose to withdraw his previous plea in the face of that risk. We conclude that defendant has not established a reasonable probability that, were it not for his counsel's allegedly deficient performance, he would have accepted the second plea offer. *Lafler*, 566 US at 174.[4]

Defendant's trial counsel was not ineffective. Further, to the extent defendant requests that this Court remand for a *Ginther* hearing, we note that defendant has made no offer of proof of facts to be established at such a hearing or otherwise convinced us of the necessity for a remand. See MCR 7.211(C)(1); *People v Taver*, 316 Mich App 588, 602; 894 NW2d 89 (2016), rev'd in part on other grounds 502 Mich 23 (2018).

## B. REASONABLENESS OF SENTENCE

Defendant also argues that the trial court's imposition of consecutive sentences resulted in a disproportionate sentence. For the reasons that follow, we decline to reach that issue at this juncture,[5] but remand for the articulation of the trial court's reasons for imposing consecutive sentences or for resentencing.

Our consideration of this issue is informed—and indeed complicated—by the manner in which the issue has been presented to us, which we can only describe as convoluted. Both in his brief on appeal and at oral argument, defendant's appellate counsel interspersed into the merits of his sentencing argument attacks upon the sufficiency of the evidence and upon the conduct of the pre-sentencing/pre-trial plea proceedings. This manner of presentation has served only to muddy the waters and to render defendant's sentencing argument virtually unparsable.

---

[4] We note that, at oral argument, defense appellate counsel argued both that we should remand this case so that defendant could again consider the second plea offer and that he was "not entirely sure that [defendant] would accept it." Regardless of whether, hypothetically, defendant would actually accept the same plea offer he previously rejected if offered it again on remand, we remain at a loss to understand how the plea issue is appropriately raised in the context of a sentencing challenge.

[5] We note, without deciding the issue, that when reviewing the proportionality of consecutive sentences, each sentence is to be reviewed on its own merits—"a proportionality challenge to a given sentence must be based on the individual term imposed and not cumulative effect of multiple sentences." *People v Norfleet*, 317 Mich App 649, 663; 897 NW2d 195 (2016). In other words, "the combined term [of the consecutive sentences imposed] is not itself subject to a proportionality review." *Id.* at 664.

At the outset, we note that defendant does not challenge the trial court's *authority* to impose consecutive sentences. "In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (quotation marks and citation omitted). MCL 750.520b(3) provides that a trial court "may order a term of imprisonment imposed under this section [i.e., as punishment for CSC-I] to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." In other words, the trial court was permitted, but not required, to order that defendant's two CSC-I sentences be served consecutively to each other, provided that the offenses arose from the same transaction. See *Ryan*, 295 Mich App at 393.

Defendant does not dispute that the offenses arose from the same transaction; in fact, he argues on appeal that "it was all the same sexual act." By choosing to advance arguments on appeal that are premised on his affirmative assertion that the offenses were "all the same sexual act," he thereby conceded the applicable statutory "same transaction" rationale that could justify consecutive sentencing in this case. MCL 750.520b(3). Indeed, at oral argument, defense appellate counsel expressly agreed that the offenses arose from the same transaction. Defendant therefore has conceded that the trial court in this case had the authority to exercise its direction to impose consecutive sentences.

The question remains, however, whether the trial court abused its discretion by imposing consecutive sentences in this case. We review for an abuse of discretion the trial court's discretionary decision to impose consecutive sentences when authorized, but not mandated, to do so by statute. *People v Norfleet*, 317 Mich App 649, 663; 897 NW2d 195 (2016). Yet, and while that is the dispositive question, we are constrained to note that nowhere in his brief on appeal does defendant argue that the trial court abused its discretion by imposing consecutive sentences.[6] Instead, he merely argues that the evidence that he digitally penetrated BE was "scant" and that in any event "it was all the same sexual act and cannot reasonably justify an *additional* 30 [years]." (Emphasis added). As noted earlier in this opinion, however, defendant's sufficiency of the evidence challenge lacks merit. Moreover, to the extent that this argument could be construed as a proportionality challenge to his CSC-I (digital penetration) conviction, defendant has failed to support the argument with facts or law, and has abandoned it. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted).[7] These cursory descriptions and conclusory arguments are far from

---

[6] Defendant's brief does not, for example, cite or reference *Norfleet*, despite his counsel's frequent references to that case at oral argument.

[7] In one passing sentence in his appellate brief, defendant additionally asserts that "due process was also violated" when the trial court "failed to state any reason why consecutive sentences were needed to achieve a reasonable sentence." However, to the extent that this could be

sufficient to convince us that the trial court's decision fell outside the range of principled outcomes. See *Norfleet*, 317 Mich App at 664; *Ryan*, 295 Mich App at 410 (upholding consecutive sentences for two counts of CSC-I when the defendant penetrated the same victim orally and vaginally as part of the same transaction).

Nonetheless, and notwithstanding the prior framing of the issue, at oral argument defendant's appellate counsel did invoke *Norfleet* in response to the Court's inquiries to assert that, while the trial court had the discretion to impose consecutive sentences, it abused its discretion by doing so in this case. In *Norfleet*, this Court made clear that the trial court must give particularized reasons to impose each consecutive sentence:

> Therefore, a trial court may not impose multiple consecutive sentences as a single act of discretion nor explain them as such. The decision regarding each consecutive sentence is its own discretionary act and must be separately justified on the record. The statute clearly provides that a discretionary decision must be made as to each sentence and not to them all as a group. Moreover, this is in accordance with the Supreme Court's statements that Michigan has a clear preference for concurrent sentencing and that the [i]mposition of a consecutive sentence is "strong medicine". While imposition of more than one consecutive sentence may be justified in an extraordinary case, trial courts must nevertheless articulate their rationale for the imposition of each consecutive sentence so as to allow appellate review. As the *Milbourn* Court aptly stated, "Discretion, however, is a matter of degree, not an all or nothing proposition." *Milbourn*, 435 Mich at 664. Additionally, we believe that requiring trial courts to justify each consecutive sentence imposed will help ensure that the "strong medicine" of consecutive sentences is reserved for those situations in which so drastic a deviation from the norm is justified. *Norfleet*, 317 Mich App at 665. (quotation marks and citations omitted).

In this case, as in *Norfleet*, the trial court spoke only in general terms regarding its rationale for imposing consecutive sentences. The trial court merely stated, "[t]he crimes that were committed are very serious." Consequently, and notwithstanding the wanting nature of the arguments presented, and the fact that we generally restrict ourselves to deciding the issues that are presented to us, see MCR 7.212(C)(5) and *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009), the circumstances of this case (including the fact that the record is sufficient for us to resolve this issue and defendant's liberty hangs in the balance), *People v Walker*, 276 Mich App 528, 545; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008), see also *LME v ARS*, 261 Mich App 273, 287; 680 NW2d 902 (2004), compel us to conclude that the trial court clearly erred by failing to articulate any rationale for the imposition of consecutive sentences. *Norfleet*, 317 Mich App at 664. Accordingly, we remand this case to

---

construed as a constitutional challenge based on the denial of due process, defendant has wholly failed to support his claim with facts, law, or meaningful argument and has abandoned it. *Kevorkian*, 248 Mich App at 389.

the trial court for the articulation of reasons for imposing consecutive sentences or for resentencing.[8]

We affirm defendant's conviction, and we remand for the articulation of reasons for imposing consecutive sentences or for resentencing. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra

---

[8] We note that the sentencing judge has since retired. On remand, the successor judge may determine whether s/he is able to articulate reasons for the earlier imposed consecutive sentences or whether to engage in resentencing.